UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

TIFFANY S.,[1]                                                             6:20-cv-2038-JR

                     Plaintiff,

                                                                    OPINION AND ORDER

       v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

Russo, Magistrate Judge:

       Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits. For the reasons stated below, the Commissioner's decision is reversed and remanded for further proceedings.

       Plaintiff asserts disability beginning September 26, 2017, due to chronic migraine disorder. Tr. 225, 249. After a hearing held on February 25, 2020, an Administrative Law Judge (ALJ)

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

determined plaintiff was not disabled. Tr. 83, 63-77.  Plaintiff contends the ALJ erred by: (1) rejecting plaintiff's symptom testimony; and (2) rejecting medical opinions.

A.      Subjective Symptom Testimony

Plaintiff completed an exertion questionnaire in which she reported pain so intense it is difficult to see and "it makes light, sound, touch very painful" leading to nausea, vomiting, balance problems, and fatigue.  Tr. 271.  Plaintiff claims her doctors cannot help her because she is "untreatable."  Tr, 275.

In response to a "headache questionnaire," plaintiff reported she had been diagnosed with untreatable migraines despite taking Gabapentin, Nortiptyline, Soma, and Topirmate to address the migraines.  Tr. 319.  Plaintiff also reported sleepiness, loss of appetite, dry mouth, and diarrhea as side effects from the medications.  Tr. 319.  Plaintiff specifically reported:

> I have been having migraine headaches since I was 13 years old, I did not get any treatment for them as my mom didn't believe I was having headaches.
>
> I have had episodes of Migraine attacks ever since then. Each episode has gotten progressively worse and the time between each episode has been shorter and shorter with intensity growing more and more severe with each episode. Now today I am physically ill with a constant - migraine, it just does not go away, ever. Infrequently the pain is somewhat less but it never goes away regardless of what I do.  Again, each and every doctor has told me there is nothing further they can do and refused to help me reduce the level of pain. All they will say is that I am untreatable.

Tr. 321.

At the hearing, plaintiff testified she drives "[n]ever, next to never" because of her migraines.  Tr. 88.  Plaintiff specifically stated that because of her condition, she "would be just like being a drunk driver on the road. I can't see. The lights, the sun, the glares, it eliminates my - - my line of sight."  Tr. 91.

Plaintiff also testified that she has complex regional pain syndrome (CRPS) resulting from unsuccessful spinal surgery.  Tr. 91-2.  Plaintiff asserts she cannot receive treatment for CRPS

because she is "not a candidate for the procedures that they wanted me to do … [b]ecause I've had them all done numerous times, they don't work on me." Tr. 93.

Plaintiff testified "[b]etween my migraine and the complex regional pain syndrome, it -- it -- being up too long is just torture. When I have things that I want to get done around the house, I can do a few things for 20 minutes, maybe half an hour, and then I have to sit and -- and just be quiet for just an hour or so, and then I'll get up and do the next project for 15 to 20 minutes or so and sit down." Tr. 93-4. Plaintiff further noted she has experienced a migraine headache everyday since August 2017, but with some good days allowing her to "get a few things done here and there." Tr. 96.

The ALJ rejected plaintiff's allegations of debilitating symptoms as disproportionate to the objective exam findings and the level of treatment received. Tr. 72. The ALJ also determined plaintiff consistently reported improvement in her migraine symptoms with treatment but subsequently testified the treatment was "ineffective." Tr. 72. The ALJ further noted plaintiff:

> could independently maintain her activities of daily living, including light household chores, cooking, and shopping or running errands with assistance. Although she testified she had suffered from the same migraine since August 2017, she also reported varied symptoms that permitted her to ride in a car for hours to get to Oregon and stay for a few days before returning, indicating she made the trip on a regular basis as she is relocating to Oregon. She also testified she needed her boyfriend or son to drive her on errands, but she also indicated she stayed behind while they were living in Oregon to take care of some business. She testified she was able to shower without assistance and live on her own while her family was already located in Oregon. While she reported extreme sensitivity to light prevented her from driving, her treatment providers noted she was able to tolerate office lights without a problem and she indicated she was able to run errands and shop on a regular basis without a problem, although she indicated someone else had to drive her. She did indicate her performance of daily activities occurred at a slower pace.

Tr. 72-3.

The ALJ similarly noted conservative treatment regarding plaintiff's mental symptoms. Tr. 73. With respect to her spinal limitations the ALJ stated:

Page 3 – OPINION AND ORDER

> the claimant is status post lumbar spinal fusion. Diagnostic imaging consistently showed her hardware to be intact. While examinations indicated use of a walker following her surgery, the record does not reflect a prescription for the use of the walker and physical examinations before and after her surgery showed she exhibited normal balance with normal strength in all extremities. Objective findings on physical examinations also showed she exhibited normal range of motion of the lumbar and cervical spines with only mild pain at extremes. She testified she has no current treatment of her leg pain and no expectation of future treatment to resolve her pain as no doctor will prescribe pain medication for her and she declined all further conservative measures. Despite the allegations of disabling pain, she reported that she was able to continue such activities as riding in a car to Oregon, running errands, and performing household chores, including cooking and caring for her own personal hygiene.

Tr. 73.

On October 25, 2007, following an exam, Dr. Lorette Labataille noted that although plaintiff stated she was currently experiencing a migraine she tolerated the bright over-head lights. Dr. Labataille noted "deceptive behavior." Tr. 407. However, Dr. Labataille specifically noted "[s]he may be anxious and depressed, but the underlying reason for her deceptive behavior is not known at this point." Tr. 407. There are other instances in the record indicating plaintiff may have exaggerated her pain. Tr. 1429 (presented at ER following back surgery due to acute pain but when offered a wheelchair she refused "stating 'I'm not sitting in your f**king chair.' Patient then ambulatory out of the ED without difficulty or assistance, demonstrating excellent strength in an exaggerated stomping of her feet on her way out."); Tr. 413-14 (presents with 10/10 migraine but "oriented to person, place, time. No Distress"); 446 (states pain is 10/10 - "patient is in no acute distress"); 498, 502 (rates pain 12 out of 10 – "No acute distress. Is pleasant and interactive"). However, the ALJ did not make a finding that plaintiff is malingering. It is otherwise unclear from the treatment note entries whether plaintiff's assertions of disabling pain lack credibility.

The objective medical findings regarding both physical and mental symptoms did often demonstrate normal findings in many areas. See, e.g., Tr. 414, 442, 449, 472, 496, 502, 518, 545,

555, 808, 831, 844. While the ALJ may discredit the plaintiff's testimony when it contradicts evidence in the medical record, see Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995), he may not discredit the subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged. Coleman v. Saul, 979 F.3d 751, 756 (9th Cir. 2020). While plaintiff may have presented with a pleasant demeanor during some examinations and engaged in some normal functioning, it is not clear if substantial medical evidence in the record demonstrates a contradiction to plaintiff's complaints of disabling pain. Although plaintiff did testify to a nearly perpetual migraine, she also asserted she has "good days" allowing her to be active for up to half an hour.

The medical record demonstrates that plaintiff's impairments required pain medications, trigger point injections, occipital nerve blocks, bilateral supraorbital nerve blocks, occipital nerve radiofrequency ablation, Botox injections, and spinal fusion surgery. E.g., Tr. 591, 457, 449, 450, 441, 1121-22, 1131, 1290-92. This record does not support a finding of conservative medical treatment. See, e.g., Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (expressing doubt that epidural steroid shots to the neck and lower back qualify as "conservative" medical treatment.). The record further does not demonstrate improvement in her condition with treatment. See, e.g., Tr. 1225 (April 2019 treatment note in which treating neurologist assessed plaintiff completely disabled from gainful employment as a result of CRPS).

Moreover, the record regarding plaintiff's daily activities does not provide substantial evidence that contradict her allegations of disabling pain. The ALJ identified little more than a basic ability to maintain plaintiff's basic needs. The Ninth Circuit has repeatedly noted the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall

disability. One does not need to be "utterly incapacitated" in order to be disabled. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989).

The ALJ erred in rejecting plaintiff's testimony.

B.  Medical Opinion

   1.  Dr. Richard Mendius

Plaintiff's treating neurologist opined as to specific limitations that would preclude plaintiff from work. Tr. 919-23. The ALJ rejects that opinion as unsupported, unexplained, and because it relied heavily on plaintiff's report of her symptoms. Tr. 74.

Under the current regulations, the ALJ shall consider supportability, consistency, the relationship with the claimant, length of treatment relationship, frequency of examinations, examination relationship (i.e., in person versus record), specialization, and other factors such as an understanding of disability policies and requirements in assessing medical opinion. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 1404.1520c(b)(2).

The new regulations still require ALJs to articulate their reasoning, specifically addressing how they considered the consistency and supportability factors. Titus L.S. v. Saul, 2021 WL 275927 (C.D. Cal. Jan. 26, 2021). An ALJ must do so in sufficient detail to allow a reviewing court to determine whether that reasoning is free of legal error and supported by substantial evidence. See Zhu v. Comm'r of Soc. Sec., 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the new 2017 regulations).

It is unclear why the ALJ found the opinion unexplained as it appears to be consistent with Dr, Mendius' treatment notes. Nonetheless, it appears the ALJ primarily relied on his opinion that Dr. Mendius relied on plaintiff's subjective complaints. However, as noted above, it is not clear

from the record whether plaintiff's subjective complaints lack credibility. Where there are conflicting physician opinions, "inconsistencies in the [treating] doctor's opinion" and "reliance on [plaintiff's] subjective complaints" are specific and legitimate reasons to reject treating physician's testimony. See Barnard v. Comm'r of Soc. Sec. Admin., 286 Fed.Appx. 989, 991 (9th Cir. 2008). The State agency consultants at the initial and reconsideration levels found plaintiff could perform a light range of work. Tr. 74. However, these opinions appear to predate plaintiff's lumbar surgery. See Tr. 120 (opinion dated February 20, 2018); Tr. 137 (opinion dated July 19, 2018); Tr. 1290-92 (anterior spinal fusion surgery occurred in February 2019). It is unclear if Dr. Mendius' opinion simply accepted plaintiff's subjective complaints or considered the objective medical findings, including the imaging issues demonstrating the need for the fusion which post-dates the surgery. In addition, Dr. Mendius opined regarding plaintiff's CRPS. See e.g., Tr. Tr. 1225 (April 2019 treatment note assessing disability as a result of CRPS)). As noted above, plaintiff asserts CRPS as a result of unsuccessful spinal surgery.

"CRPS is a disorder in which pain, occurring spontaneously or from a sensory stimulus, is disproportionately far more painful than it should be. An example of this would be light touching of the skin, which normally is not painful, yet it causes extreme pain perception in CRPS patients." National Organization for Rare Disorders, Complex Regional Pain Syndrome, NORD, https://rarediseases.org/rare-diseases/reflexsympathetic-dystrophy-syndrome/; see also POMS DI 24580.025, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424580025. Given the subjective nature of such condition, it is entirely reasonable for a treating physician to rely on subjective complaints in forming an opinion regarding limitations that may result from the disease. See, e.g., Ostalaza v. Astrue, 2009 WL 3170089, at *5 (C.D. Cal. Sept. 30, 2009) (Opinions focused on subjective complaints is not a legitimate reason for rejecting physician opinion

regarding fibromyalgia) citing Rogers v. Comm'r, Soc. Sec. Admin., 486 F.3d 234, 245 (6th Cir.2007); Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996) (noting that fibromyalgia symptoms are "entirely subjective").[2]  Accordingly, the ALJ erred in assessing Dr. Mendius' opinion.

    2.    Christine Erickson

Plaintiff sought treatment from therapist Christine Erickson, MS, MFT.  Ms. Erickson also provided an opinion that plaintiff is disabled.  The ALJ did not address the opinion and upon remand, the parties may seek to evaluate this opinion.

C.    Remand

If the ALJ erred in some respect in reaching a decision to deny benefits and the error was not harmless, ordinarily, the remedy is to remand for further proceedings. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  A remand for an award of benefits should only be made in rare circumstances.  Id. at 1100.

To remand for an award of benefits under the credit-as-true rule, the Court should first ask whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence.  Id.  Here, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony and the opinion of Dr. Mendius which both establish disability if accepted.

The Court should next ask whether the record has been fully developed, i.e., whether there are outstanding issues that must be resolved before a determination of disability can be made and whether further administrative proceedings would be useful.  Id. at 1101.  Administrative proceedings are generally useful where the record has not been fully developed, there is a need to

---

[2] CRPS is a condition like fibromyalgia that is diagnosed based on subjective symptoms that are not manifested by objective clinical data.  Griffin v. AT&T Umbrella Benefit Plan No 3, 2020 WL 1185286, at *6 (E.D. Wis. Mar. 12, 2020).

resolve conflicts and ambiguities, or the presentation of further evidence may prove enlightening in light of the passage of time. Id.

The record in this case could benefit from further development to help resolve ambiguities regarding plaintiff's testimony given that some medical professionals indicated possible deceptive behavior regarding her assertion of disabling pain. Plaintiff's subjective complaints play a large role in her allegations of disability and are also relied upon by her treating neurologist.

Finally, if no outstanding issues remain, the Court must determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding. Id. Even if all three requirements are met, remand for further proceedings is still within the Court's discretion. Id. at 1102. The Court finds a remand for further proceedings is appropriate in this case.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and remanded for further proceedings. The Clerk is directed to enter a judgment accordingly.

DATED this 22nd day of March, 2022.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

Page 9 – OPINION AND ORDER